12931

STATE v. JERNIGAN *ET AL.*

(153 S. E., 480)

*Mr. G. Lloyd Ford,* for appellants,

*Mr. L. M. Gasque, Solicitor,* for the State.

May 31, 1930.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The defendants, Robert Jernigan and D. B. Marlowe, were tried and convicted at the March, 1928, term of Court of General Sessions for Horry County, before his Honor, Judge C. C. Featherstone, and a jury, under an indictment charging them with assault and battery with intent to kill. From the sentence and judgment of the Court the defendants have appealed to this Court, imputing error to the trial Judge in the particulars set forth under thirty-four exceptions, many of which contain a number of subdivisions.

The difficulty out of which the indictment arose took place in Horry County, about 9 o'clock at night, on or about November 12, 1927, in the road, near the home of the defendant Marlowe. The testimony on the part of the State, as given by Duck Causey, the prosecuting witness, tends to

show that on the night of the date named, November 12, 1927, he was traveling in his automobile, going to his home, and soon after passing the home of the defendant Marlowe, on said road, about fifteen yards beyond the house, as he slowed up the speed of his automobile for the purpose of descending a rough hill, he was attacked by the defendants, who jumped upon the running board of his car, pulled the switch-key out, which caused the car to stop, and proceeded to cut him with knives, each of the defendants engaging in the cutting, and inflicted upon him, the prosecuting witness, very severe wounds. According to the version of the affair by Duck Causey, the prosecuting witness, he was wholly without fault and was attacked without warning and not given an opportunity to defend himself. It further appears from the statement of Causey that one Sam Jernigan came to the car and called to the defendant Robert Jernigan not to cut him (Causey) any more; that he had cut him enough. Also, that after the defendants had ceased cutting him (Causey) they ordered him to get out of his car, saying they were going to take it, and he got out, walked to the home of Sylvester Causey, who helped him to get a physician. The prosecuting witness also testified that the defendants had a shot gun at the time they made the attack upon him.

According to the testimony of the defendant Marlowe, on the night in question, he was at home with his family; that his family consisted of his wife and several children, some of his daughters being about grown, and they, together with some other young folks who had assembled there, were having some music; that the prosecuting witness, Duck Causey, drove up in front of his house in an automobile and stopped; that at the time this defendant was in the room with his wife, and because of the noise outside, at the request of his wife, went out to investigate, and by the use of his searchlight recognized Duck Causey in his automobile, who asked this defendant if the Jernigan boys were there, having reference to the defendant Robert Jernigan and his

brother, Sam; that about that time the defendant Robert Jernigan walked out and Causey knocked him down by striking him a heavy blow upon the head with an automobile jack; that Causey ran off, leaving his car behind; that he (this defendant Marlowe) did not see anyone cut Causey and did not know Causey had been cut.

The defendant Jernigan testified to the same effect as the defendant Marlowe, except he claimed to have done all the cutting to Causey, and that Causey was mad with the Jernigan boys on account of trouble they had had with Causey's brother. It was also the contention of the defendants that Causey was drinking.

The transcript contains a mass of testimony adduced at the trial, but the above statement is sufficient to give a clear conception of the contention of the parties.

We will consider the exceptions in their order:

### EXCEPTION 1

"That it was prejudicial error, it is respectfully submitted, for the Court to allow the Solicitor to ask Ben Brown, witness for the State, the following questions:

"Q. Was any drinking up there? A. No, sir; not as I seed.

"Q. Did you smell any liquor around there? A. No, sir.

"Mr. Ford: I object, because the question is leading, and second, the defendant is not being tried for violation of the prohibition law.

"The Court: It is leading, but otherwise it is all right.

"Q. Did you or not see any whiskey there? A. No, sir; I didn't see a drop.

"Q. Did you or not smell any liquor there? A. No, sir.
—"the error being that the Court permitted the asking of questions which were leading and to ask by indirection ques-

tions charging the defendants with another crime under the law."

When the testimony quoted in this exception is considered in connection with the other testimony, it will. be seen that the purpose of the same was to ascertain if the contention of the defendants was true; that is, the contention that at the time of the difficulty Causey, the prosecuting witness, had whisky in his automobile and was under the influence of whisky. Even if the purpose of the testimony had been to ascertain if the defendants at the time of the difficulty were under the influence of whisky, it would have been competent. We do not think the questions propounded by the Solicitor could be construed as charging the defendants with unlawfully handling contraband whisky, as appellants seem to think. In our opinion the trial Judge committed no error in overruling the objection to the testimony.

### Exception 2

"That the Court erred, it is respectfully submitted, in allowing the following questions and testimony by the Solicitor of Lonnie Causey, a witness for the State, to-wit:

"Q. Do you know whether your friends, the defendants, were drunk? A. No, they were not drunk.

"Q. Were they drinking? A. I don't know.

"Q. Had they been drinking some whisky—yes or no?

"A. They might have been drinking some.

"Q. Tell me the truth; do you know. A. They had been drinking some.

—"the error being that the questions were leading, and charged the defendants with the commission of another violation of law not charged in the indictment of this case."

There was no error in allowing this testimony. It was competent for the purpose of showing the frame of mind and general condition of the defendants at the time of the

difficulty in question. It was not objectionable on the ground that the questions were leading, and the position of appellants that the defendants were being charged with a violation of law other than that charged in the indictment is not well taken.

### EXCEPTION 3

The error charged under this exception is the refusal of the trial Judge to strike out, on defendants' motion, the testimony complained of under Exception 2. The exception is overruled for the reasons stated in our discussion of Exception 2.

### EXCEPTION 4

In appellants' fourth exception error is charged to the trial Judge because of his refusal to allow the witness, N. A. Shelly, a witness for the State, to answer the following question, on cross examination:

"Do you know of him ever having been in anything of this kind?"

Counsel in asking this question had reference to Causey, the prosecuting witness. It was in order to attack the general reputation of Causey for peace and good order, but, as the trial Judge ruled, it was not proper under the rule to go into specific acts of violence, unless the same were committed along about the time in question.

### EXCEPTION 5

Under this exception appellants complain because the Solicitor interrupted their counsel while propounding a question for the purpose of stating the rule in offering proof for truth and veracity. In our opinion there is no merit in this exception.

### EXCEPTION 6

In this exception error is charged to the trial Judge on account of permitting the Solicitor to ask leading questions, repeating the questions and attacking the

reputation of the defendants without their reputation being put in issue. The record does not disclose that counsel for the defendants interposed any objection on the ground that the Solicitor asked leading questions in connection with the testimony complained of or because the Solicitor repeated questions. At the time counsel for defendants simply remarked, "That does not bring him within the rule." If counsel had, at the time, interposed objection upon the ground that appellants now complain of, the trial Judge would, no doubt, have instructed the Solicitor not to ask his witness leading questions, and to avoid repeating questions unless it was necessary. Sometimes it is necessary to repeat questions in the examination of a witness. Such matters must necessarily be left largely to the good judgment of the presiding Judge, and appellants, in our opinion, have no just ground for complaint in this instance. The reputation of the prosecuting witness, Causey, had been attacked, and the Solicitor was meeting that attack. The testimony solicited by the Solicitor was directed to the reputation of Causey, the prosecuting witness. Only one sentence asked at the time complained of had any reference to the defendants, which was as follows:

"Q. Do you know the defendants pretty well? A. Yes, I think so."

We fail to see in what way the defendants were prejudiced by this question. Furthermore, no objection to the question was interposed.

## EXCEPTION 7

"That it was prejudicial error, it is respectfully submitted, for the Court to refuse to allow the witness, N. A. Shelly, to answer on cross examination as follows:

"Is it good—the reputation for peace?"

And by interrupting as follows:

"The Court: Is it good or bad? Answer the question.

"Witness: Different people talks different ways, and it is a hard question for me to answer. I am fair to tell the right thing, if I know it. I have eat many a time at a table when I wasn't hungry and my appetite hasn't left me."

—"the error being that the question on cross examination was competent, and by interrupting, the Court deprived the defendant on cross examination of an answer to a material question."

There is no merit in this exception.

## EXCEPTION 8

In this exception appellants complain of error because the trial Judge cautioned the defendant Marlowe not to state what his wife stated to him when he was testifying as follows:

"Q. Did you recognize anybody's voice?  A. Yes, sir; after I went to the door. I got up and took my light and went to the door. My wife asked me to.

"The Court: Never mind telling what your wife said."

Appellants contend: "The defendant (Marlowe) had detailed no conversation between himself and his wife, and further, the sudden outburst or statement made at the time of the assault was competent evidence as a part of the *res gestae.*" We are unable to agree with the contention of the appellants, but granting that their position is correct, the appellants were in no way prejudiced by what took place.

## EXCEPTION 9

"That it was prejudicial error, it is respectfully submitted, for the Court to interrupt the defendant on direct examination, as follows:

" 'Q. What, if anything, did they find in the car when they got there?  A. They found a "pre-di" bottle (pre-digested beef bottle), full of whisky.

" 'The Court: Did you see it? A. I saw it'—the error being that by the interruption on the part of the Court, intimated to the jury that the defendant was not telling the truth and had the effect of making ridiculous the testimony of the defendant."

It will be observed that the witness in answering the question propounded by counsel said: "They found a 'pre-di' bottle full of whisky." The witness did not say he found it. Therefore, a question very probably arose in his Honor's mind as to whether or not the witness was giving hearsay testimony, and he asked the witness if he saw it, referring to the bottle containing whisky. His Honor, as presiding Judge, anxious to see that justice was done in the case, had a right to ask the question.

## EXCEPTION 10

"That it was prejudicial error, it is respectfully submitted, for the Court to allow the Solicitor to cross examine the defendant, Marlowe, and ridicule the defendant, as shown by the record thereof, the error being that by said conduct of the case the testimony of the defendant was discredited."

This exception is too general. It does not point out any particular error, and will therefore not be considered.

## EXCEPTION 11

In this exception the appellants complain of error because in the cross examination of the defendant Marlowe the Solicitor asked that defendant the following question:

"Q. What are you laughing about? He was in the road. It took about two minutes to get you to admit he was in the ruts in the road. You saw this boy Duck run back with something you think was a jack, and cracked that boy where? A. The best I could see he hit him back here somewhere (indicating on the head)."

It is the contention of the appellants that the Solicitor was permitted to ridicule the defendant (Marlowe) and thereby discredit his testimony. So far as the record discloses the appellants raised no objection at the trial to the conduct of the Solicitor, of which they now complain, and for that reason alone the exception should be overruled. But waiving such objection, we cannot say that the question was improper, and we are satisfied that the appellants were not prejudiced thereby.

## EXCEPTION 12

"That it was prejudicial error, it is respectfully submitted, of the Court to allow the Solicitor in cross examination of the defendant, Jernigan, to ask the same question over and over and continually wrangle with the witness, as shown by the record in the case, the error being that by this conduct of the case the defendant's testimony was ridiculed, discredited, and the witness was further not allowed to answer questions asked by the Solicitor."

This exception is too general, and will therefore not be considered.

## EXCEPTION 13

In this exception error is alleged because the trial Judge permitted the Solicitor in his examination of the witness Huggins to ask what some children said at the time of the trouble about Causey, the prosecuting witness, being drunk. The trial Judge ruled against appellant's contention for the reason that counsel for the defendants in the course of the examination of the witness, brought out part of the conversation with the children, and the Solicitor, therefore, had the right to bring out the full conversation.

## EXCEPTION 14

The matter complained of under this exception is that the Solicitor in his cross examination of the witness Miss Lucy

Marlowe ridiculed and discredited her testimony, and that such conduct was prejudicial to the defendants. An examination of the transcript bearing on this exception convinces us that the position of appellants is not well taken, and that the exception cannot be sustained. The witness was on cross examination by the Solicitor and, as ruled by the trial Judge, the questions propounded by the Solicitor were allowable.

## EXCEPTION 15

"That the Court erred, it is respectfully submitted, in allowing the Solicitor to examine the witness Huggins, as follows:

" 'Q. Didn't this man Jernigan, the defendant in this case, tell you that Marlowe planned the cutting, the assaulting of this man? A. No, sir.

" 'Mr. Suggs: We object, unless Mr. Marlowe was present. He couldn't be bound by that.

" 'The Court: Anything the defendant said is competent —"the error being that by the question the Solicitor was endeavoring to connect the defendant Marlowe with the offense by a statement made by Jernigan, which was hearsay and incompetent."

The questions asked this witness by the Solicitor were permitted by the trial Judge, for the reason that the witness was on cross examination, and were in our opinion allowable for that purpose. On cross examination of a witness it may often be necessary to allow questions to bring out the whole truth which would not be allowable on direct examination. In any event, the most that the defendant Marlowe could have asked for was to request the trial Judge to instruct the jury that this testimony could not be considered against him, and this the Judge did. Under any view of the case it was competent as against the defendant Jernigan.

### EXCEPTION 16

This exception is based on an alleged error, in ruling out the following question asked the witness Blanton by counsel for the defendants:

"Q. I will ask you if from those that you saw both there and at the Marlowe home, those that communicated to you to get you to make the arrest, I will ask you to state whether or not there was any intimation that this defendant, Marlowe, did it."

Upon objection by the Solicitor, the trial Judge ruled as follows: "Yes, sir; that would be hearsay." We fully agree with the ruling of the trial Judge.

### EXCEPTION 17

This exception is based on the trial Judge ruling out the following question asked a witness by defendants' counsel:

"Q. Was that blood at such a point that a person sitting under the steering wheel would have made the blood from the right arm?"

The Court sustained the objection of the Solicitor to the question on the ground that it was a matter of opinion. We think his Honor made a proper ruling on the question.

### EXCEPTION 18

In this exception appellants complain because of the wording of a question on cross examination of one of defendants' witnesses by the Solicitor, contending that the Solicitor made an unfair intimation. In our opinion there is no merit in the exception.

### EXCEPTION 19

This exception alleges a similar error to that charged in Exception 17. In our opinion the same is without merit.

## EXCEPTION 20

This exception is based on an alleged error in permitting the Solicitor to ask the witness, Sam Jernigan, brother of one of the defendants, on cross examination, the following question:

"Q. Not a soul, including your own sweet self, had an opportunity to put the liquor in the car, did they?"

Think the question shows a little sarcasm, which should have been left out, but the defendants were in no way prejudiced by the remark, and the exception must be overruled.

## EXCEPTION 21

This exception imputes error to the trial Judge because of allowing the prosecuting witness, Causey, to testify in reply to certain matters which appellants contend were brought out in chief. The trial Judge ruled that the testimony was competent in reply, and from our examination of the transcript, we think that his Honor ruled correctly.

## EXCEPTIONS 22 AND 23

In these exceptions error is alleged because the Solictor in the course of his argument before the jury, in referring to the defendants, referred to them as "his own guilty self," and "those two birds." While in making an argument before a jury, whether in a criminal case or civil case, counsel for the respective parties should use proper language and stay within the record; in the heat of the fight they must necessarily be expected to think and speak in strong terms, and reasonable allowance should be made for this. While it is not proper for counsel to go out of the record and state a conclusion not supported by the record, counsel has the right in making his argument to state his conclusion, based on the evidence, as to the guilt or innocence of the defendant in a criminal case, or as to the rights of the

parties in a civil case, or as to what weight should be given the testimony of a witness. The record in the case at bar does not disclose the nature of the argument made by counsel for the defendants before the jury, but it often happens that, in a heated argument, strong statements and broad claims, made by counsel for the defendant in addressing the jury, cause the Solicitor who follows him to strike back, and to use stronger and harsher language than he would use in a different atmosphere. The trial Judge, who has listened to the testimony, heard the arguments, and is in a position to fully appreciate all with which counsel has to contend, is the proper one to control counsel when presenting the case to the jury and, unless an abuse of discretion on the part of the trial Judge clearly appears, this Court should not interfere. It may be in the case at bar that the Solicitor should not have used the language complained of by appellants, but we are not prepared to hold that he was not warranted in doing so. We have no doubt that his Honor, Judge Featherstone, the trial Judge, properly exercised his discretion in the matter, and that the defendants were not prejudiced. Furthermore, in this day of enlightenment, the use of harsh terms by counsel seldom, if ever, influences the verdicts of juries. The average juror of to-day will resent harsh or unfair treatment of a person before the Court. These exceptions are overruled.

### EXCEPTION 24

Under this exception the appellants charge error to the trial Judge in permitting the Solicitor to read to the jury a portion of the testimony of the witness, Robert Causey, over the objection of counsel for the appellants. The record shows that his Honor ordered all of the testimony of this witness read to the jury. The exception was evidently taken under a misapprehension.

## EXCEPTION 25

This exception charges error to the trial Judge in permitting the Solicitor to misquote the testimony, as follows:

"Robert Jernigan didn't show the sign on his head to anybody."

In the first place, the Solicitor had a perfect right to state his version of the testimony. If he did not state it correctly the jury knew it, for the jury is presumed to remember and know the testimony as well as counsel in the case, and counsel does not gain anything for his client by misquoting the testimony. In the second place, the statement made by the Solicitor in open Court in explaining what he actually said is supported by the evidence in the case. The appellants have no ground for complaint on this line.

## EXCEPTIONS 26 AND 27

These exceptions charge error on the part of the trial Judge in refusing the defendants' motion to quash the indictment and in allowing the same to be amended. The motion to quash was based on the ground that "the allegation as to the weapon used, being 'knives and guns,' is too indefinite and uncertain and is alleged in the alternative and is disjunctive." The trial Judge overruled the motion to quash, and allowed the indictment to be amended by adding the words, "shot and penetrate." An examination of the portion of the indictment contained in the transcript of record convinces us that the indictment was sufficient, and that defendants' motion to quash was properly overruled; that it was sufficient without the amendment allowed, but that the defendants were in no way prejudiced by allowing the amendment.

## EXCEPTIONS 28, 29, 30, 31, 32 AND 33

All of these exceptions impute error to the trial Judge with reference to his charge to the jury. In view of the

length of this opinion we wish to avoid writing additional that is not necessary and, having made a careful study of his Honor's charge to the jury, we consider it sufficient to state that in our opinion his Honor, Judge Featherstone, charged the law fairly, clearly and correctly on every phase of· the case and that the defendants have no just ground to complain of the charge.

## EXCEPTION 34

This, the last exception presented by the appellants, imputes error to his Honor, Judge Featherstone, in refusing the defendants' motion for a new trial. The motion for a new trial raised questions which we have considered in passing upon the other exceptions presented, and which we have decided adverse to appellants' contention. This exception is therefore overruled.

All of the exceptions are overruled, and the judgment affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS JUSTICES COTHRAN and BLEASE concur.

MR. JUSTICE STABLER concurs in result.