19313

The STATE, Respondent, v. B. J. WIGGINS, Appellant.

(184 S. E. (2d) 697)

*Messrs. George A. Payton, Jr., F. Henderson Moore, and Ernest G. Deveaux, Jr.,* of Charleston *for Appellant,*

cite:

*Randolph Murdolph, Jr., Esq., Sol.,* of Hampton *for Respondent,* cites:

November 8, 1971.

BUSSEY, Justice:

The appellant was indicted for and convicted of breach of trust with fraudulent intent at the January 1971 term of the Court of General Sessions for Colleton County. He appeals from his conviction and resulting sentence asserting numerous errors. We reverse on the ground that the Court of General Sessions for Colleton County had no jurisdiction of the alleged offense, thus rendering other questions moot.

In August 1970 Wiggins was an employee of William H. Smoak, proprietor of Farena Furniture Company in Walterboro. Wiggins, a resident of Charleston County, was employed as a route collector and salesman, his route being a western portion of Charleston County and portions of Dorchester and Orangeburg Counties. On Friday and Saturday, August 28-29, Wiggins collected some $400 on his route mostly in Charleston County, no part thereof being collected or received in Colleton County, and he was to account therefor on Monday the 31st. When Wiggins came in from work on Saturday night, he found that his wife had been arrested for the issuance of worthless checks, the amount of money involved being some seven or eight hundred dollars, which he was informed he had to raise by 9 o'clock Monday morning in order to extricate his wife from serious trouble. According to Wiggins, he borrowed one hundred dollars in cash from his father and admittedly got from his father a check for $525, which he took to Walter-

boro on the afternoon of Sunday, August 30th, for the purpose of getting the same cashed by Mr. Boatwright, the manager of his employer's store.

When Wiggins checked in with his employer on Monday morning he admittedly was $118 short, but denied that he had intentionally or knowingly spent or used any portion of his employer's money and did not know that he was short until his cash was checked against his receipt book. To the contrary, there was evidence from the State to the effect that he was some $208 short; that he told Boatwright on Sunday afternoon that he was going to use some of his employer's money to help extricate his wife from difficulty; and also evidence to the effect that he told his employer on Monday morning that he had done so.

A timely motion for a directed verdict was made on behalf of Wiggins on the ground that no part of the alleged crime occurred in Colleton County and that the court, therefore, had no jurisdiction. Such motion was denied and the case submitted to the jury with an instruction to the effect that there were two elements to the offense charged, the intent and the appropriation, and that if the jury found that neither of these had occurred in Colleton County then their verdict should be "not guilty by reason of lack of jurisdiction of this court."

Article I, Section 17, and Article VI, Section 2 of the Constitution require criminal prosecutions to be tried in the county in which the offense was committed, in the absence of a change of venue. The right of a party to be tried in the county where the crime was committed is jurisdictional.

"Some crimes are of such nature that they may be committed partly in one county and partly in another. When an offense is committed partly in one county and partly in another, that is, where some acts material and essential to the offense and requisite to its consummation occur in one county and some in the other, the accused may be tried in

either. However, this rule has no application when the offense is complete in one county." *State v. Gasque,* 241 S. C. 316, 128 S. E. (2d) 154.

Here we think the evidence fails to prove that any act material and essential to the offense and requisite to its consummation occurred in the County of Colleton. No part of the allegedly misappropriated money was received or entrusted to Wiggins in Colleton County, most, if not all thereof, having been received by him in Charleston County, and, as far as the record shows, at a time prior to any knowledge on his part that his wife was in difficulty. Any misappropriation by him, even under the State's evidence and theory of the case, occurred not in Colleton County but in Charleston County. We think it clear on the record before us that the offense, if committed, was complete in Charleston County.

Boatwright testified, *inter alia,* on cross-examination, that it was his "understanding" that Wiggins had made up his mind to use some of his employer's money, in extricating his wife, while in Boatwright's house in Colleton County on the particular Sunday afternoon. He did not testify as to the basis of such understanding or opinion on his part, or as to any facts which would warrant a similar conclusion or finding on the part of the jury. Apparently relying on such testimony by Boatwright, however, the State argues that the case of *State v. McCann,* 167 S. C. 393, 166 S. E. 411, is authority for the proposition that the county "where the fellonious intent was formed" has jurisdiction. The cited case is clearly distinguishable upon the facts and reliance thereupon by the State, we think, misplaced.

The decision in McCann was predicated, at least in large measure, on *State v. Thurston,* 2 McMul. (27 S. C. L. 382), and the principles thereof later followed and applied in *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464. In each of these cases jurisdiction was upheld in the county where the money or property was received. In each of said

cases the court concluded that the evidence was sufficient to warrant an inference that fraudulent intent did exist at the time of the receipt of the money or property and that such was obtained or received with such intent. In the instant case none of the money was received in Colleton County and, moreover, there is no evidence giving rise to an inference of any fraudulent intent existing at the time of the receipt. The record contains, we think, no competent evidence of any probative value as to precisely when or where thereafter any fraudulent intention was formed.

Reversed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.