1681

The STATE, Respondent v. Thomas E. GALLOWAY, Appellant.

(407 S.E. (2d) 662)

Court of Appeals

` *Stephen John Henry*, of *Taylor, Stephenson & Henry*, Greenville, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.*, and *William Edgar Salter, III*, Columbia, and *Sol. Joseph J. Watson*, Greenville, *for respondent.*

Heard Feb. 19, 1991.

Decided July 22, 1991.

BELL, Judge:

This is an appeal from a conviction for resisting arrest. On December 20, 1988, a Greenville County Sheriff's deputy stopped a vehicle being driven by Ricky Mann after observing the vehicle weaving down the road and crossing the center line. Thomas Galloway, a passenger in the car, became very loud and began shouting obscenities at the deputy. He continued this conduct after being warned to stop. As a result, the deputy advised Galloway that he was under arrest for public drunkenness and disorderly conduct. Galloway refused to get out of Mann's car, however, and continued to hurl epithets at the deputy. The deputy alone was unable to coax or force him out of the car. Galloway finally was removed from the car only after a struggle in which the deputy had to be assisted by a second officer. Galloway was charged with and convicted for resisting arrest. He appeals. We affirm.

Viewed in the light most favorable to the State, the facts are as follows.

Upon stopping Mann's vehicle, Deputy Burriss arrested Mann for driving while under the influence, possession of mar-

ijuana, and driving under suspension as an habitual offender. He asked Galloway, who was seated in the front passenger seat, to remain in the car. Nonetheless, Galloway attempted repeatedly to get out of the car and in the process tossed a beer can and a plastic cup on the road. Galloway ultimately did get out of the car against Deputy Burriss's instructions, at which time the deputy observed him to be obviously intoxicated and unable to drive. Burriss instructed him to get back into the car and wait. He then called for a wrecker to remove the car. At that point he did not intend to arrest Galloway, although he was going to ticket Galloway for possession of an open alcoholic beverage container in a vehicle and for littering.

Deputy Porter arrived at the scene to assist Burriss. Burriss continued with Mann's arrest, and while writing the car's serial number on a tow sheet, Galloway mumbled something to him. Burriss then went to the passenger side of the car and began picking up the beer can and cup. Galloway shouted obscene names at him and made repeated statements replete with vulgar expletives. Burriss then advised him he was under arrest and at least twice asked him to step out of the car. Galloway responded with a string of curse words, refusing to get out of the vehicle. After attempting and failing two times to pull him out of the car, Burriss requested Deputy Porter's assistance. Porter initially tried to coax Galloway out of the car, but received the same vulgar response as Burriss.

Deputies Burriss and Porter then each gripped one of Galloway's arms and tried to pull him out of the car. Galloway braced his feet against the door jamb and the frame of the car, fighting the officers as they attempted to remove him. Once they got him through the door of the vehicle, he and Deputy Burriss fell to the ground in a struggle. The officers eventually got him off the ground and against the car, but still had difficulty handcuffing him because he was thrashing around. Finally, the officers were able to secure the handcuffs and restrain him.

Once order was restored, the deputies noticed some blood on the car and on their hands. They first thought they had cut themselves on something in the struggle, but then realized neither of them had been cut. They asked Galloway if he was hurt during the struggle, but he gave no response other than

more indecent language. Neither officer observed injuries to Galloway at that time and he was placed in Burriss's patrol car with Mann for transport to the local detention center.

In transit, Deputy Burriss heard Galloway tell Mann that the officers had cut off his ear during the struggle, but Galloway still did not tell Burriss he was hurt and Burriss could not see the wound when he looked back in response to Galloway's statement to Mann. Galloway then began to fake a heart attack by kicking around in the back seat and gasping for breath. Burriss rushed him to the hospital, where Galloway remained while Mann was taken to jail. The discussion of the ear apparently was overshadowed by the feigned heart attack.

After hospital staff members determined it was safe to turn attention away from Galloway's heart, they were able to concentrate on his ear injury. An examination revealed that his earlobe had been detached. The wound was stitched closed. Galloway then was released from the hospital. At the instruction of a superior officer, he was taken home by a Sheriff's deputy. The earlobe was found in the backseat of Mann's car the next day. On December 29, 1988, Galloway was served with a warrant for resisting arrest. Approximately eleven months later, he was tried and convicted.

Galloway's primary defense at trial was that the officers' testimony and the resisting arrest charge were fabricated in an attempt to persuade him not to pursue a civil action for the detached earlobe.

He appeals his conviction alleging the trial judge erred by: (1) refusing to grant his motion for a preliminary hearing and to quash the indictment; (2) denying his motion for a directed verdict; (3) improperly excluding evidence; and (4) refusing several of his requests to charge the jury.

## I.

We do not reach the merits of the issues concerning the preliminary hearing or the indictment. Galloway offers no exception to nor argument against the trial judge's ruling that his motion for a preliminary hearing and to quash the indictment was untimely. He argues only that the judge erred in holding he was not entitled to a preliminary hearing under South Carolina Rules of Criminal Procedure, Rule 2.

Therefore, the unappealed alternative ruling that the motion was untimely constitutes an independent ground for upholding the judgment. *Nichols Motorcycle Supply, Inc. v. Regency Kawasaki, Inc.*, 295 S.C. 138, 142-43, 367 S.E. (2d) 438, 441 (Ct. App. 1988).

## II.

Galloway's next argument is that he was entitled to a directed verdict on the resisting arrest charge because there was no evidence the officers had probable cause to arrest him for the underlying offense of disorderly conduct.

South Carolina's Public Disorderly Conduct statute reads in pertinent part:

> Any person who shall . . . be found on any highway . . . in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner [or using] obscene or profane language on any highway . . . shall be deemed guilty of a misdemeanor. . . .

S.C. Code Ann. § 16-17-530 (1976).

Viewed in the light most favorable to the State, the officers' testimony established the existence of probable cause to arrest Galloway. *See State v. Roper*, 274 S.C. 14, 260 S.E. (2d) 705 (1979). Their evidence showed that Galloway was not only on the highway in a grossly intoxicated state, but also that he was conducting himself in a boisterous manner and using obscene and profane language. The judge, therefore, properly denied the motion for directed verdict. *See State v. Mathis*, 287 S.C. 589, 340 S.E. (2d) 538 (1986).

## III.

Galloway's next argument is based upon the judge's refusal to admit evidence which Galloway contends was critical to two aspects of his defense. First, he claims it was error for the judge to exclude evidence of an attempted "deal" by the police to drop charges against him in exchange for his promise not to bring a civil suit against them. And second, he argues the judge erred by failing to admit into evidence his severed earlobe, a photograph of it, and a physician's testimony or summary concerning the injury.

In an effort to support his claim that the police offered a "deal" in exchange for a waiver of his right to pursue a civil action, Galloway argues he should have been permitted to testify as to what was said to him in his conversation with Officer White, the deputy who allegedly tried to get him to sign a release. The trial judge excluded the testimony on the ground that it was hearsay. We hold the judge committed no error in excluding this testimony, as the record plainly reveals it was hearsay and Galloway failed to demonstrate it came within any exception to the hearsay rule. *See Lee v. Gulf Insurance Co.*, 248 S.C. 296, 149 S.E. (2d) 639 (1966) (unless hearsay comes within one of the exceptions it is not admissible).

Galloway also argues the judge erred in refusing to admit a letter from his attorney to the county attorney notifying the county of Galloway's intent to sue and of Officer White's offer not to pursue charges if Galloway would sign a release. We discern no error in the judge's exclusion of this letter. It, too, plainly constituted hearsay, since it detailed not only what Galloway told his attorney, but also what Officer White allegedly told Galloway for the purpose of proving the truth of the matter asserted.

Since the letter was not admissible, Galloway's argument that the judge erred in excluding the testimony of the staff member in the county attorney's office who received the letter is moot. If we were to address the argument, however, we would find no error because the record reveals the staff member would only have testified that the letter was sent and that what was sought to be entered into evidence was a copy of the original. These matters were not contested by the State. Furthermore, although Galloway's counsel stated at trial that he "had intended to offer" the testimony of the staff member, he did not offer her as a witness and the judge did not rule either that she could or could not testify.

Galloway asserts in his brief that the judge also erred in excluding the testimony of Officer White. We do not reach this argument because he has failed to preserve the issue by exception. This Court may not decide an issue not raised by proper exception. *Connolly v. People's Life Insurance Co.*, 299 S.C. 348, 384 S.E. (2d) 738 (1989).

Galloway also argues that the judge erred in refusing to admit his severed earlobe, a photograph of it, and his physician's testimony and summary. This argument is without merit.

The admission or exclusion of evidence is within the sound discretion of the trial judge. *State v. Bailey*, 276 S.C. 32, 274 S.E. (2d) 913 (1981). His exercise of discretion will not be disturbed on appeal absent a showing of abuse or a commission of legal error resulting in prejudice. *State v. Frank*, 262 S.C. 526, 205 S.E. (2d) 827 (1974). In this case, there was no prejudicial error because the earlobe, photograph, physician's testimony and summary all were irrelevant and cumulative.

Evidence is relevant when it logically tends to prove or disprove a material fact in issue. *Brower v. Sorenson— Christian Industries*, 61 N.C. App. 337, 300 S.E. (2d) 561 (1983); *Schroeder v. Hunter Douglas, Inc.*, 172 Ga. App. 897, 324 S.E. (2d) 746 (1984). Neither the earlobe nor the photograph in this case were relevant because neither tended to prove or disprove a disputed matter. All that either could have proved was that the earlobe was detached. That much was conceded by the State. The earlobe and photograph also were cumulative to evidence already admitted. Galloway and Mann testified that the earlobe had been detached during the struggle. Galloway displayed the remaining portion of his ear to the jury.

The physician's testimony and summary were likewise cumulative. The physician's evidence would have shown only that the earlobe was detached, which was not contested and was established by other evidence. Galloway focuses on the language in the summary stating that the earlobe was "essentially bitten or pinched away." He argues this evidence was relevant because it would have contradicted the "accident" theory offered by the deputies. Galloway fails to acknowledge the remainder of the summary, however, which establishes that the doctor's report is based upon what Galloway told him. For example, the summary states, "This gentleman states that . . . his left ear was pinched off or torn off. It is not clear to me what the mechanism of injury was. . . . I was consulted over the phone from the [Emergency Room] regarding this injury, and even then it was unclear exactly what had happened. That

really is irrelevant, I think, to repairing his wound at this time, however." Since the quoted language demonstrates the doctor did not have any independent idea of how the injury occurred, and his opinion was based on what Galloway told him, his testimony and summary were cumulative to Galloway's testimony. The judge committed no error in excluding this evidence.

## IV.

Galloway next contends the judge committed error when he refused to instruct the jury that in order to prove the offense of disorderly conduct, the State was required to show not only that Galloway used vulgar or obscene language, but also that the words were of a type which naturally tend to provoke a violent response or threaten a breach of the peace. Additionally, he argues the judge erred in refusing to charge that even if the alleged language otherwise would have amounted to disorderly conduct, the language could not have amounted to that offense if spoken only in the presence of the arresting officers.

We hold the judge did not err in refusing these requests to charge. First, we note that Galloway was on trial for resisting arrest, not disorderly conduct. Second, the law he requested to be charged is not the law of South Carolina. As stated by our Supreme Court in *State v. Hill*, 254 S.C. 321, 326, 175 S.E. (2d) 227, 230 (1970), "disorderly conduct is not a common-law crime, and what constitutes the offense depends primarily on the wording of the particular statute providing for its punishment."

■ Code Section 16-17-530 does not require that the vulgar language be of a type which tends to provoke a violent response or threaten a breach of the peace. Furthermore, it does not require that the language be spoken in the presence of someone besides the arresting officers. The judge, therefore, committed no error in refusing these requested instructions. *See State v. Davis*, 282 S.C. 45, 317 S.E. (2d) 452 (1982).

■ The judge also properly refused Galloway's request to charge that one has the right to defend himself from the use of excessive force by a police officer. The charge was properly refused because it was not applicable to any issue in the case.

Galloway's testimony was that he did not resist the arrest. In *State v. Weaver*, 265 S.C. 130, 137, 217 S.E. (2d) 31, 34 (1975), our Supreme Court held the following under very similar facts:

> The appellant placed himself in the inconsistent position of, on one hand, denying that he resisted a lawful arrest, and on the other [sic] that the court should have instructed the jury that because the officer used an unreasonable amount of force, he had a right to resist the arrest.
>
> There was no duty of the trial judge to instruct the jury as requested by the appellant because such charge was not applicable to any issue in the case. No instruction should be given by the trial judge, at the request of the appellant, which tenders an issue which is not presented or supported by the evidence.

We read *Weaver* as controlling authority on this issue and uphold the judge's refusal to charge based upon the reasoning in that case.

Affirmed.

GARDNER, J., and LITTLEJOHN, Acting J., concur.