2242

The STATE, Respondent v. Deborah SARVIS, Appellant.

(450 S.E. (2d) 606)

Court of Appeals

---

*Chief Atty. Daniel T. Stacey* and *Asst. Appellate Defender Lisa T. Gregory, South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* and *Deputy Atty. Gen. Salley W. Elliott,* Columbia, and *Sol. Ralph J. Wilson,* Conway, *for respondent.*

Heard Sept. 8, 1994.

Decided Oct. 24, 1994; Reh. Den. Dec. 6, 1994.

HOWELL, Chief Judge:

Deborah Sarvis appeals from her conviction on murder charges stemming from the shooting death of her boyfriend, Oscar Nobles. Sarvis challenges two evidentiary rulings of the trial judge. We affirm.

Sarvis and Nobles met in February 1991, and a relationship developed over the course of the next few months. The relationship was stormy, characterized by heavy drinking by both Sarvis and Nobles, and frequent verbal and physical altercations, separations, and reconciliations. Sarvis spent approximately two weeks during July at a battered woman's shelter.

On the afternoon of September 7, 1991, Nobles returned to Sarvis' house extremely intoxicated. According to Sarvis, an argument developed after she refused to give Nobles money. Sarvis stated that Nobles pushed her into a bookcase, punched her in the face bloodying her nose, and threatened her with a gun. John Freeman, a friend of Nobles' who was present at the scene, however, saw no bruises or blood on Sarvis, and stated that he did not see Sarvis and Nobles fighting. While she testified that she did not remember doing it, Sarvis shot Nobles several times. Noble died as a result of nine gunshot wounds. Freeman testified that he saw Sarvis shoot Nobles, and that she "told me the best thing I could do was go and keep my mouth shut." The police found Nobles' body covered with a blanket, plywood and a small mattress in the backyard of Sarvis' house. In her defense, Sarvis presented evidence regarding the battered woman syndrome. The trial judge charged the jury on self defense and the battered woman syndrome. The jury returned a verdict of murder.

## I.

On appeal, Sarvis challenges the trial court's decision to allow in evidence of a prior conviction. Sarvis was convicted of armed robbery in 1975. At some point

while serving her sentence for armed robbery, Sarvis escaped. The escape increased her sentence, and she was paroled in February of 1984. Sarvis argues that the conviction was too remote and should have been excluded.

A prior conviction for a crime of moral turpitude may ▮▮ be used to impeach the credibility of a witness if the conviction is not too remote in time. *See, e.g., Horton v. State*, 306 S.C. 252, 411 S.E. (2d) 223 (1991); *State v. Johnson*, 271 S.C. 485, 248 S.E. (2d) 313 (1978). Whether a prior conviction is admissible is within the discretion of the trial judge, and his decision will not be disturbed absent manifest abuse of that discretion or injustice. *Johnson*, 271 S.C. at 486, 248 S.E. (2d) at 314.

There is no fixed time in this State after which a conviction becomes too remote, *State v. Livingston*, 282 S.C. 1, 317 S.E. (2d) 129 (1984), and the existing case law provides little guidance for making such a determination. In *State v. Hill*, our Supreme Court affirmed the trial court's decision to exclude a ten-year-old conviction, noting that "the previous conviction was too remote to possess the requisite probative value for admission." *State v. Hill*, 268 S.C. 390, 234 S.E. (2d) 219 (1977), *cert. denied, Hill v. South Carolina*, 434 U.S. 870, 98 S.Ct. 211, 54 L.Ed. (2d) 147 (1977). However, the court found no error in admitting evidence of a conviction over ten years old when only four years had elapsed since the defendant's release. *State v. Jones*, 271 S.C. 287, 247 S.E. (2d) 43 (1978). In *Johnson, supra*, the court affirmed the admission of a thirteen-year-old conviction when the defendant had committed two other crimes of moral turpitude after being released for the conviction at issue. 271 S.C. at 487, 248 S.E. (2d) at 314. Similarly, the court found no error in admitting a twelve-year-old conviction when the defendant "had not been a model person"[1] since the conviction. *Livingston*, 282 S.C. at 7, 317 S.E. (2d) at 132. Finally, the court in *Horton* noted (without ruling on the issue) that a fifteen-year-old conviction

---

[1] The court determined that Livingston was not a "model person" because a murder charge against him was nolle prossed; he was charged with possession of heroin with intent, possession of a sawed off shotgun and simple possession of marijuana, charges which were dropped upon a plea to simply possession of heroin; and he "allegedly committed" two armed robberies. 282 S.C. at 7 n. 1, 317 S.E. (2d) at 132 n. 1.

"raises the issue of remoteness in time." 306 S.C. at 254, 411 S.E. (2d) at 224.

The Federal Rules of Evidence allow the use of certain prior convictions to impeach the credibility of a witness. However, evidence of a conviction is not admissible if "more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." Fed. R. Evid. 609(b). While the federal rule of course is not binding in this case,[2] its bright-line rule does provide some assistance in determining when a conviction becomes too remote to be relevant. Here, Sarvis was convicted in 1975, seventeen years before her trial in 1992, but she was released in 1984, only eight years before the trial. Evidence of Sarvis' armed robbery conviction, therefore, would have been admissible in federal court. While the time between Sarvis' conviction and the trial is fairly substantial, her release from prison was much more recent. Therefore, in the absence of clearer guidance by our Supreme Court, we cannot say that the trial judge abused his discretion by admitting evidence of the conviction.

Moreover, any error in admitting the conviction was harmless. The trial judge properly instructed the jury that the conviction could not be used as evidence of her guilt, and that it could only be considered for purposes of determining Sarvis' credibility. We must presume that the jury followed these instructions. Sarvis' credibility was effectively challenged by other evidence in the case, particularly the testimony of Freeman, the eyewitness to the shooting. The conviction simply provided an additional ground upon which the jury could decide to disbelieve Sarvis' testimony. *See State v. Schumpert,* — S.C. —, 435 S.E. (2d) 859 (1993) (any error in admission of evidence cumulative to other unobjected to evidence is harmless). To the extent that the jury may have attached any importance to the violent nature of the crime for which Sarvis was convicted, there was other competent evidence that Sarvis had a violent disposition. The evidence produced at trial left little doubt that Sarvis shot Nobles, and Sarvis herself offered testimony about the December 1990

---

[2] In *Livingston,* our Supreme Court specifically did not adopt the federal ten-year rule. 282 S.C. at 7, 317 S.E. (2d) at 132.

death of her husband, John Sarvis. While Sarvis apparently offered the evidence to raise the suspicion that Nobles may have killed her husband, the jury could have concluded from her testimony and the other evidence presented that Sarvis killed her husband. Sarvis discovered her husband's body in her backyard, and his body was also covered with a blanket. A witness testified that he saw bullets at Sarvis' house in March 1991, and that Sarvis stated she would "kill anybody that [expletive] with me, just like I killed my husband." Moreover, a SLED agent testified that the bullets found in the bodies of Nobles and John Sarvis were fired from the same gun. Thus, even without the evidence of the conviction, there was other competent evidence in the record from which the jury could conclude that Sarvis was violent.

## II.

Sarvis also challenges the trial court's refusal to admit ■ one page of a three-page document from the "Ask A Nurse" program at Conway Hospital. A notation on the form indicates a call from Sarvis in July of 1991 complaining of headache and dizziness as a result of an assault by her boyfriend. The court refused to admit the document on the ground of hearsay. Sarvis argues that the document is admissible as a business record.

The Uniform Business Records as Evidence Act provides an exception to the hearsay rule for certain ■ records of an act, event, or condition. S.C. Code Ann. § 19-5-510 (1985). The statute, however, contains prerequisites to admission of the record. The custodian of the Conway Hospital records testified she had no knowledge of the "Ask A Nurse" program and no further foundation was presented to establish the manner in which the records were prepared. The requirements of the statute were not satisfied, therefore the document was properly excluded. We may affirm the ruling of the trial judge on this basis alone. Rule 220(c), SCACR. Moreover, we conclude error, if any, if the failure to admit the record was harmless. The first two pages of he report were admitted into evidence, and those pages established that Sarvis in fact made the call. In addition, other competent evidence in the record established the altercation between Sarvis and Nobles. Sarvis' roommate at the shelter testified

that Sarvis told her that Nobles broke her nose, and a friend of Nobles testified that Nobles admitted that he had beaten Sarvis in the past and would "beat the devil out of her" if he could find her. Because the evidence in the disputed page of the Ask-a-Nurse records was merely cumulative, the trial judge committed no error by excluding it. *See, e.g. State v. Galloway*, 305 S.C. 258, 407 S.E. (2d) 662 (Ct. App. 1991).

Accordingly, for the foregoing reasons, the decision of the trial court is hereby

Affirmed.

CURETON and CONNOR, JJ., concur.