526 S.E.2d 237

**The STATE, Respondent,**

v.

**Ricky Dean NEW, Appellant.**

**No. 3094.**

Court of Appeals of South Carolina.

Submitted Dec. 7, 1999.

Decided Dec. 20, 1999.

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Salley W. Elliott, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for Respondent.

ANDERSON, Judge:

Ricky Dean New was convicted of larceny. He was sentenced to five years imprisonment. On appeal, New argues the trial court erred in permitting the Solicitor to bolster the State's main witness. We affirm.[1]

## FACTS/PROCEDURAL BACKGROUND

On July 7, 1997, Carrie Jackson drove to work around 7:40 a.m. Because construction workers were scheduled to lay a foundation at her home, Jackson left the back door unlocked in case they needed to get in. The workers completed their work and departed around noon. They did not lock the back door to the house. At some point after the workers left, but before Jackson returned home that afternoon, an intruder entered and stole electronic equipment valued in excess of $1,500. Jackson provided the serial number from her missing television to an officer with the Aiken County Sheriff's Depart-

---

1. Because oral argument would not aid the Court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

316

ment. The number was entered in a national database for stolen items.

Subsequently, Sgt. Tom Dennis of the Richmond County Sheriff's Office notified Investigator Donald Lynn Ghant, with the Aiken County Sheriff's Department, that Edward Bibbs pawned the television in Augusta, Georgia at 2:25 p.m. on the day of the theft. Bibbs is the brother of Pamela Jacobson, who was at that time the girlfriend of Ricky Dean New. New is a cousin of Carrie Jackson's husband Adam. On July 25, Bibbs gave a statement to the police claiming New had called him and offered the television in satisfaction of a $40 debt. Two days later, investigators took a statement from Jacobson, which incriminated New and Bibbs. On August 1, Bibbs gave a second statement implicating himself and New. Both were arrested and charged with burglary and grand larceny.

Bibbs pled guilty to both charges. At New's trial, Bibbs, already serving his sentence, testified against New. Bibbs stated that New called him on the day in question and asked for a ride to Aiken. Bibbs agreed and New directed him to the Jacksons' home. The two men entered the house and removed a television, stereo and microwave. New did not testify at trial. The jury convicted New of larceny and the trial court sentenced him to five years imprisonment.

### ISSUE

Did the trial court err in permitting the Solicitor, in closing argument, to bolster the credibility of Edward Bibbs, New's accomplice and the State's key trial witness?

### LAW/ANALYSIS

New contends the trial court erred in permitting the Solicitor, in closing argument, to bolster the credibility of Edward Bibbs, New's accomplice and the State's key trial witness. In particular, New claims the Solicitor impermissibly argued outside the record that Bibbs would be considered a "rat" when he returned to prison, and therefore insinuated to the jury that Bibbs was subjecting himself to danger by testifying against New. This assertion is meritless.

During his argument to the jury, the Solicitor stated:

This trial—your decision that you will make on this trial depends upon the credibility of the witnesses and it depends upon whether you believe what the witnesses the State offered to you, whether you believe what they had to say.

. . . .

. . . Credibility and believability, credibility of a witness depends upon whether you believe what they have to say, whether what they have to say makes sense to you and whether what they have to say goes along with everything else you've heard . . . . .

. . . .

. . . Edward Bibbs as you all remember was the inmate from the Department of Corrections. He is the one wearing the jail uniform. He has pled guilty to this crime and he was currently serving time for this crime.

Ladies and gentlemen of the jury, he was promised nothing to testify. Back then when he pled he was promised nothing to come here today. He has zero to gain by being on that chair and talking about Ricky New and telling us that Ricky New was with him. Zero to gain. His sentence will not be decreased. He will not get out any earlier. His, nothing will change. He is serving time for what he did. It does not matter to him one way or the other—

At this point, defense counsel objected "to the Solicitor testifying as to facts not in evidence about Mr. Bibbs." The judge cautioned the Solicitor not to "go into anything that's not in evidence." The Solicitor continued:

[Bibbs] has nothing to gain. He has already pled guilty as I just said.

In fact, ladies and gentlemen, Mr. Bibbs by getting on that stand and testifying against someone who was with him has everything to lose.

*By testifying against another person, Mr. Bibbs is considered a rat. He is in prison right now—*

. . . .

*He will be considered a rat in prison. That will not suit him well. They do not treat rats well. He has everything to lose.*

> *Now he has already been taken back to Wateree Correctional Institute where he came from.  He has testified against someone.  That is the only consequence he will pay for being here today.  He is now a rat.  Nothing else will change.  His life is at the Wateree Correctional Institute and he is now a rat.*  (Emphasis added)

At the mention of the word "rat," New's counsel immediately objected.  In response, the State argued there was no basis for the objection.  We agree.

■ Initially, we question whether the issue presented in this appeal is preserved for appellate review.  At trial, New timely objected to the Solicitor's comments, first alleging they were outside the record and later, as to the "rat" reference, stating "Your honor, I object to the Solicitor testifying as to this."  The trial court overruled both objections.  It is well settled that an objection must be on a specific ground.  *See State v. Patterson*, 324 S.C. 5, 482 S.E.2d 760 (1997)(general objection which does not specify particular ground on which objection is based is insufficient to preserve question for review); *State v. Holliday*, 333 S.C. 332, 509 S.E.2d 280 (Ct.App.1998)(in order to preserve for review an alleged error in admitting evidence, objection should be sufficiently specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the trial judge).  Rule 103(a)(1), SCRE, however, only requires specificity where the ground for objection is not apparent from the context of the discussion contained in the record.

■ The trial judge is allowed wide discretion in dealing with the range and propriety of argument of the Solicitor to the jury.  *See State v. White*, 246 S.C. 502, 144 S.E.2d 481 (1965).  Ordinarily, the court's rulings on such matters will not be disturbed.  *Id.*  The test of granting a new trial for alleged improper closing argument of counsel is whether the defendant was prejudiced to the extent that he was denied a fair trial.  *State v. Brisbon*, 323 S.C. 324, 474 S.E.2d 433 (1996).  A new trial will not be granted unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997).

In *State v. Durden*, 264 S.C. 86, 212 S.E.2d 587 (1975), our Supreme Court set forth the parameters of permissible prosecutorial argument:

In 23A C.J.S. *Criminal Law* § 1107, closing arguments, similar to that of the solicitor in this case, are discussed as follows:

"So long as he stays within the record and its reasonable inferences, the prosecuting attorney may legitimately appeal to the jury to do their full duty in enforcing the law, or to return the verdict which he conceives it to be their duty to return under the evidence, and may employ any legitimate means of impressing on them their true responsibility in this respect, as by stating that a failure to enforce the law begets lawlessness. Thus, he may in effect tell them that the people look to them for protection against crime, and may illustrate the effect of their verdict on the community or society generally with respect to obedience to, and enforcement of, the law; he has the right to dwell on the evil results of crime and to urge a fearless administration of the criminal law; and he may ask for a conviction, or assert the jury's duty to convict. He may argue with reference to any matter which the jurors may properly consider in arriving at their verdict, and may point out as well the matters which they should not consider."

*Durden*, 264 S.C. at 92, 212 S.E.2d at 590.

If a Solicitor's closing argument remains within the record evidence and the reasonable inferences therefrom, no error occurs. *Id.* Undoubtedly, a Solicitor may argue the State's version of the testimony presented, and furthermore may comment on the weight to be accorded such testimony. *See State v. Raffaldt*, 318 S.C. 110, 456 S.E.2d 390 (1995); *State v. Allen*, 266 S.C. 468, 224 S.E.2d 881 (1976). On the other hand, a closing argument may be held improper where it appeals to personal bias or arouses the jury's passions or prejudice. *See Durden, supra; State v. White*, 246 S.C. 502, 144 S.E.2d 481 (1965).

The believability of Bibbs' testimony was the crucial factor in the success of the State's case. Our Supreme Court has held specifically that "[a] solicitor's argument concerning

the credibility of the State's witnesses based on the record and its reasonable inferences is not error." *State v. Caldwell,* 300 S.C. 494, 505, 388 S.E.2d 816, 822 (1990). *See also Raffaldt, supra* (the State may comment on the credibility of witnesses in argument). Here, the Solicitor responded to New's objection by indicating her comments were not outside the record, but instead were based on common knowledge: "It's a common known, it's a well-known fact. . . . He has testified against someone, he will be considered-[a rat]." We agree and find the Solicitor's comments regarding Bibb's credibility were reasonable inferences from the evidence in the record. *See Caldwell, supra* (finding Solicitor's remarks referencing credibility of critical State witnesses permissible and directly related to the evidence where common sense biases of the witnesses were apparent from the record).

For the same reasons, New's claim that the Solicitor's remarks constituted impermissible bolstering is without merit. *See Caldwell,* 300 S.C. at 506, 388 S.E.2d at 822 (no improper bolstering where Solicitor argued State's witnesses were credible and "should be admired for their fortitude in telling the truth about their own family member"); *State v. Copeland,* 278 S.C. 572, 579, 300 S.E.2d 63, 68 (1982)(Solicitor's statement that defendant's accomplice and State's key witness was " 'going to prison for at least-I submit to you for somewhere around twenty years' " was not bolstering even though accomplice-witness received complete immunity from prosecution in exchange for his testimony, because evidence showed he would be sentenced later for various other crimes he committed elsewhere); *cf. United States v. Creamer,* 555 F.2d 612 (7th Cir.1977)(no bolstering where purpose of prosecutorial exchanges with witness was to establish pressures under which witness testified by putting before the jury the witness's understanding of his plea agreement and what would happen to the witness if he did not testify truthfully); *Commonwealth v. Gurney,* 413 Mass. 97, 595 N.E.2d 320 (1992)(prosecutor's argument was permissible inference from facts presented at trial and not bolstering where he stated in closing that police officers and complainant were credible because their testimony was reasonable and they had no reason to target defendant with false accusations).

Moreover, as the Court concluded in *State v. McAlister*, 133 S.C. 99, 102, 130 S.E. 511, 512 (1925), "[t]he argument by illustration or analogy, involving reference to matters of common knowledge, the facts of history, and current events of common and public notoriety, is ordinarily well within the bounds of legitimate forensic effort at the bar." This view was propounded in *Salinas v. State*, 542 S.W.2d 864, 867 (Tex.Crim.App.1976), where the Court of Criminal Appeals of Texas affirmed and held a prosecutor's comment that "it is a safe inference that being an informer is a very hazardous profession" was based on common knowledge.

In *Andujo v. State*, 755 S.W.2d 138 (Tex.Crim.App.1988), the prosecutor, in closing argument, stated the following about the State's key witness: "Sure, she didn't want to get involved. You don't snitch, Ladies and Gentlemen, and live. You don't snitch. That's why she didn't want to get involved." *Id.* at 145. The defendant's attorney objected to the "snitch" statement, contending it was "totally outside of the evidence." *Id.* at 145. The prosecutor replied that his comment was "a reasonable inference drawn from the evidence." *Id.* The court overruled the objection. On appeal, the Texas Court of Criminal Appeals first noted the issue was not "presented for review" because "the bolstering objection or complaint now urged on appeal was not made to the trial court." *Id.* The court affirmed, declaring the statement complained of "was not divorced from common knowledge or an unreasonable deduction from the evidence." *Id.* at 146. Here, as in *Andujo*, the critical issue in the case was the credibility of the State's key witness, Edward Bibbs.

## CONCLUSION

We hold the State may comment upon the credibility of the State's witnesses *based upon the trial record and its reasonable inferences.* A Solicitor's remarks referring to the State's witness as a "rat" or "snitch" do *not* constitute impermissible bolstering *provided* the credibility of the witness is a critical issue in the case. Because we find the Solicitor's statement that Bibbs would be known as a "rat" when he returned to prison was an argument based on common knowl-

edge and a reasonable inference from the evidence presented at trial, New's conviction for larceny is

**AFFIRMED.**

CONNOR and STILWELL, JJ., concur.