652 S.E.2d 409

**STATE of South Carolina, Respondent,**

v.

**Carmen L. RICE, Appellant.**

**No. 4300.**

Court of Appeals of South Carolina.

Heard Sept. 11, 2007.

Decided Oct. 5, 2007.

304

306

Deputy Chief for Capital Appeals Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Solicitor Warren B. Giese, all of Columbia, for Respondent.

ANDERSON, J.

Carmen L. Rice (Rice) was convicted of murder and armed robbery and sentenced to life plus thirty years, concurrent. Rice challenges her conviction, claiming the trial court erred by (1) ruling the portion of a prior inconsistent statement concerning third-party guilt inadmissible; (2) admitting alleged hearsay testimony; (3) permitting an in-court identification; (4) admitting business records under Rule 803(6), SCRE; and (5) failing to issue a curative instruction following the State's closing argument. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On the evening of October 25, 2001, Carmen Rice and Iris Bryant (Bryant) joined Bernard Brennan (Brennan) at the Varsity in Columbia, where Brennan was playing pool with his friend, Alton Page. Brennan told Page one of the women was his cousin from New York and the other was her friend from Beaufort. Eventually, Brennan, Rice, and Bryant went to Calloway's to eat.

After their meal, Brennan and the two women left Calloway's together. They drove in his Mercedes to an isolated section of Richland County, near the intersection of Fairfield Road and Interstate 20.

Later that night, Deputy Tom Lyons found Brennan's Mercedes in a ditch on Crawford Road. Brennan was still buckled in his seatbelt, the engine was running, and the vehicle was in gear. Brennan had been shot five times in the back and died as a result of the shooting. His wallet was missing.

The police learned Bryant was involved in the murder and robbery after receiving information from one of Bryant's friends. Bryant subsequently implicated Rice in the murder and robbery.

In her testimony at Rice's trial, Bryant confirmed she and Rice had planned to rob Brennan but denied any complicity in a plan to murder him. Bryant claimed Rice unexpectedly shot Brennan from the backseat with the weapon Rice was issued by her employer. After the shooting, Rice removed Brennan's wallet and wiped down the car. Then the two women fled.

Prior to trial, Bryant had given investigators multiple statements implicating other individuals in the robbery and murder. At Rice's trial, she confessed she lied in those previous interviews because she was afraid she would be charged with murder if she admitted being at the crime scene. Rice attempted to impeach Bryant's testimony with a prior inconsistent statement Bryant made to Alana Quattlebaum, a fellow prisoner. The import of Bryant's statement to Quattlebaum was that a woman named Nikki, rather than Rice, actually killed Brennan.[1]

Brennan's friend, Alton Page, testified he could not identify either of the individuals he saw with Brennan on the night of the murder, but he recalled that one of them wore a "bright orange top."

Heidi Feagin was a waitress at Calloway's in October of 2001. Feagin served Brennan and the two women on October 25, and recognized Brennan as a "regular customer." She described one of the women as having a stocky or medium build and wearing a bright orange top. The other woman was thinner and younger. Before trial, Feagin was shown a photographic lineup of six women. The array included only Bryant's photograph. Feagin did not identify Bryant, but instead selected two other women as Brennan's companions.

The investigation ultimately led to Rice's indictment and trial for the armed robbery and murder of Bernard Brennan. The jury returned a verdict of guilty and Rice was sentenced to life imprisonment for murder and thirty years, concurrent, for armed robbery. At the time of Rice's trial, Bryant had been charged with murder and armed robbery.

## ISSUES

1. Did the trial court err by ruling a prior inconsistent statement concerning third-party guilt inadmissible?
2. Did the trial court err by admitting hearsay testimony?

---

1. Rice sought to introduce testimony that Bryant's cousin, Tiki, committed the crimes. However, Bryant's initial statements to police did not mention Tiki, but instead named Nikki as the person involved. Trial counsel referred to her as "some other girl" and "some other person" in questioning Bryant about her prior statements to police. Whether Tiki and Nikki were the same person remains unresolved.

3. Did the trial court err by permitting an in-court identification that was allegedly unreliable?

4. Did the trial court err by admitting business records under Rule 803(6), SCRE, that were untrustworthy?

5. Did the trial court err by failing to give the jury an instruction curing the prosecutor's improper comment in closing?

### STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006); *State v. Wilson*, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001); *State v. Wood*, 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct.App.2004). We are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum*, 338 S.C. 441, 454, 527 S.E.2d 105, 111 (2000); *State v. Williams*, 326 S.C. 130, 135, 485 S.E.2d 99, 102 (1997); *State v. Patterson*, 367 S.C. 219, 224, 625 S.E.2d 239, 241 (Ct.App.2006) *cert. pending State v. Landis*, 362 S.C. 97, 101, 606 S.E.2d 503, 505 (Ct.App.2004). This court does not reevaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence. Wilson, 345 S.C. at 1, 545 S.E.2d at 827; *State v. Mattison*, 352 S.C. 577, 583, 575 S.E.2d 852, 855 (Ct.App.2003).

### I. Admission of Evidence

The admissibility of evidence is within the sound discretion of the trial judge. *State v. Mansfield*, 343 S.C. 66, 77, 538 S.E.2d 257, 263 (Ct.App.2000); *State v. Patterson*, 337 S.C. 215, 228, 522 S.E.2d 845, 851 (Ct.App.1999). Evidentiary rulings of the trial court will not be reversed on appeal absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant. *Mansfield*, 343 S.C. at 77, 538 S.E.2d at 263.

On appeal, we are limited to determining whether the trial court abused its discretion. *State v. Douglas*, 367 S.C. 498, 506, 626 S.E.2d 59, 63 (Ct.App.2006) *cert. pending; State v. Walker*, 366 S.C. 643, 653, 623 S.E.2d 122, 127 (Ct.App.

2005). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support. *Fields v. Regional Med. Ctr. Orangeburg,* 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005); *see also Simon v. Flowers,* 231 S.C. 545, 550, 99 S.E.2d 391, 393–94 (1957) (" '[E]rror at law' exists: (1) when the circuit judge, in issuing [the order], was controlled by some error of law . . . or (2) where the order, based upon factual, as distinguished from legal, considerations, is without adequate evidentiary support."); *McSween v. Windham,* 77 S.C. 223, 226, 57 S.E. 847, 848 (1907) ("[T]he determination of the [trial] court will not be interfered with, unless there is an abuse of discretion, or unless the exercise of discretion was controlled by some error of law.").

## II. Closing Arguments

A trial court is vested with broad discretion in dealing with the range of propriety of closing argument, and ordinarily its rulings on such matters will not be disturbed. *State v. Condrey,* 349 S.C. 184, 195–96, 562 S.E.2d 320, 325–26 (Ct.App.2002). This court will not disturb a trial court's ruling regarding closing argument unless the trial court commits an abuse of discretion. *State v. Copeland,* 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996); *State v. Jernigan,* 156 S.C. 509, 524, 153 S.E. 480, 486 (1930). An appellate court must review the argument in the context of the entire record. *State v. Patterson,* 324 S.C. 5, 17, 482 S.E.2d 760, 766 (1997).

The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Id. Once the trial court has allowed the argument to stand, the defendant has the burden of proving the argument denied him a fair determination of guilt or innocence. *State v. Copeland,* 278 S.C. 572, 580, 300 S.E.2d 63, 68 (1982). Improper comments on closing do not require reversal if the appellant fails to prove he did not receive a fair trial because of the alleged improper argument. *Randall v. State,* 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004). To warrant reversal, the appellant must prove both abuse of discretion and resulting prejudice. *State v. Taylor,* 356 S.C. 227, 231, 589 S.E.2d 1, 3 (2003); *State v. Patterson,* 367 S.C. 219, 232, 625 S.E.2d 239, 245 (Ct.App.2006) *cert pending; State v. Harrison,* 343 S.C. 165, 172, 539 S.E.2d 71,

74 (Ct.App.2000) (citing *State v. Hughey,* 339 S.C. 439, 450, 529 S.E.2d 721, 727 (2000)); *State v. Sierra,* 337 S.C. 368, 373, 523 S.E.2d 187, 189 (Ct.App.1999).

## III. Harmless Error

The commission of legal error is harmless if it does not result in prejudice to the defendant. For the error to be harmless, we must determine "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." *Taylor v. State,* 312 S.C. 179, 181, 439 S.E.2d 820, 821 (1993) (citing *Arnold v. State,* 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992)); *State v. Buckner,* 341 S.C. 241, 247, 534 S.E.2d 15, 18 (Ct.App.2000) (citing *State v. Andrews,* 324 S.C. 516, 479 S.E.2d 808, 812 (Ct.App.1996)). "[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" *State v. Pagan,* 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) (quoting *State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989)); *State v. Adams,* 354 S.C. 361, 381, 580 S.E.2d 785, 795 (Ct.App.2003); *see also State v. Kelley,* 319 S.C. 173, 179, 460 S.E.2d 368, 371 (1995) (noting this court will not set aside a conviction for insubstantial errors not affecting the result when guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached).

"Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained." *Pagan,* 369 S.C. at 212, 631 S.E.2d at 267 (citing Arnold, 309 S.C. at 172, 420 S.E.2d at 842); *State v. Mizzell,* 349 S.C. 326, 333, 563 S.E.2d 315, 318–19 (2002); *State v. Sherard,* 303 S.C. 172, 175, 399 S.E.2d 595, 596 (1991) ("Error in a criminal prosecution is harmless when it could not reasonably have affected the result of the trial."). "An error is not reversible unless it is material and prejudicial to the substantial rights of the appellant." *Visual Graphics Leasing Corp., Inc. v. Lucia,* 311 S.C. 484, 489, 429 S.E.2d 839, 841 (Ct.App.1993).

## *LAW/ANALYSIS*

### I. Third–Party Guilt Under *Holmes v. South Carolina*

Rice contends the trial court erred in ruling inadmissible portions of the prior inconsistent statement Bryant made to

Quattlebaum suggesting evidence of third-party guilt. We disagree.

## A. Issue Preservation

At the outset, we question whether the issue regarding third-party guilt is preserved for our review. When initially raised, trial counsel specifically stated, "I'm not going to argue third-party guilt that this other person did it" and "I don't plan to argue third-party guilt." Trial counsel stated he was offering the evidence solely to impeach Bryant's testimony. The trial court opined the statement suggested third-party guilt and asked trial counsel, "I assume no other evidence related to" the third party other than this statement is going to be presented. Trial counsel offered nothing further. Consequently, the trial court did not analyze third-party guilt in depth or rule on the issue.

## B. Impeachment by Prior Inconsistent Statement Containing Evidence of Third-Party Guilt

Rule 801(d)(1), SCRE provides that a prior statement by a witness is not hearsay and is admissible if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with the declarant's testimony...." "A prior inconsistent statement is admissible as substantive evidence when the declarant testifies at trial and is subject to cross-examination." *State v. Caulder*, 287 S.C. 507, 513, 339 S.E.2d 876, 880 (Ct.App.1986) (citing *State v. Copeland*, 278 S.C. 572, 581, 300 S.E.2d 63, 69 (1982)).

However, in this case the admissibility of a prior inconsistent statement containing substantive evidence of third-party guilt requires further scrutiny. Our state supreme court has imposed strict limitations on the admissibility of testimony indicating third-party guilt. *See State v. Mansfield*, 343 S.C. 66, 81, 538 S.E.2d 257, 265 (Ct.App.2000). Evidence offered by a defendant as to the commission of the crime by another person is limited to facts which are inconsistent with the defendant's guilt. *Id.* The evidence must raise a reasonable inference as to the accused's innocence. *Id.*

■ South Carolina's law concerning the admissibility of third-party guilt evidence was articulated in *State v. Gregory*:

[E]vidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . . But before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party. Remote acts, disconnected and outside the crime itself, cannot be separately proved for such a purpose. An orderly and unbiased judicial inquiry as to the guilt or innocence of a defendant on trial does not contemplate that such defendant be permitted, by way of defense, to indulge in conjectural inferences that some other person might have committed the offense for which he is on trial, or by fanciful analogy to say to the jury that someone other than he is more probably guilty.

198 S.C. 98, 104–05, 16 S.E.2d 532, 534–35 (1941); *accord State v. Cooper,* 334 S.C. 540, 549–50, 514 S.E.2d 584, 588 (1999); *State v. Al–Amin,* 353 S.C. 405, 427–29, 578 S.E.2d 32, 44–45 (Ct.App.2003). If the testimony is inadmissible as substantive evidence of third-party guilt, it may, nevertheless, still be admissible for impeachment purposes. *See Cooper,* 334 S.C. at 549–50, 514 S.E.2d at 588 (citing *State v. Fossick,* 333 S.C. 66, 69, 508 S.E.2d 32, 33 n. 1 (1998)).

The United States Supreme Court examined and clarified the rule announced in *Gregory* in its review of *State v. Holmes,* 361 S.C. 333, 605 S.E.2d 19 (2004). *Holmes v. South Carolina,* 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). Holmes was convicted in state circuit court of murder, first degree burglary, first degree criminal sexual conduct, and robbery. He received a death sentence. *State v. Holmes,* 361 S.C. at 335, 605 S.E.2d at 20. Holmes appealed, contending the trial court erred in excluding evidence of third-party guilt. Id. at 339, 605 S.E.2d at 22. The South Carolina Supreme Court, referencing the *Gregory* rule, found no error in the exclusion. *Id.* at 343, 605 S.E.2d at 24. In addition, the Court cited *State v. Gay,* 343 S.C. 543, 545, 541 S.E.2d 541, 542 (2001), and announced that "where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged

guilt does not raise a reasonable inference as to the appellant's own innocence." *Id.* Applying the *Gay* standard, the South Carolina Supreme Court affirmed the circuit court and held Holmes could not "overcome the forensic evidence against him to raise a reasonable inference of his own innocence." *Id.*

The United States Supreme Court vacated and remanded the South Carolina Supreme Court's decision. *Holmes*, 547 U.S. 319, 331, 126 S.Ct. 1727, 1735. In doing so, Justice Alito explained the South Carolina Supreme Court radically changed and extended the *State v. Gregory* rule by applying the additional rule from *State v. Gay*:

In *Gay*, after recognizing the standard applied in *Gregory*, the [South Carolina] court stated that "[i]n view of the strong evidence of appellant's guilt-especially the forensic evidence ... the proffered evidence ... did not raise 'a reasonable inference' as to appellant's own innocence." Similarly, in the present case, as noted, the State Supreme Court applied the rule that where there is strong evidence of [a defendant's] guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt may (or perhaps must) be excluded. Under this rule, the trial judge does not focus on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt. Instead, the critical inquiry concerns the strength of the prosecution's case: If the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues.

Furthermore, as applied in this case, the South Carolina Supreme Court's rule seems to call for little, if any, examination of the credibility of the prosecution's witnesses or the reliability of its evidence. Here, for example, the defense strenuously claimed that the prosecution's forensic evidence was so unreliable (due to mishandling and a deliberate plot to frame petitioner) that the evidence should not have even been admitted. The South Carolina Supreme Court responded that these challenges did not entirely "eviscerate" the forensic evidence and that the defense challenges went to the weight and not to the admissibility of that evidence.

Yet, in evaluating the prosecution's forensic evidence and deeming it to be "strong"-and thereby justifying exclusion of petitioner's third-party guilt evidence-the South Carolina Supreme Court made no mention of the defense challenges to the prosecution's evidence.

Interpreted in this way, the rule applied by the State Supreme Court does not rationally serve the end that the *Gregory* rule and its analogues in other jurisdictions were designed to promote, i.e., to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues. The rule applied in this case appears to be based on the following logic: Where (1) it is clear that only one person was involved in the commission of a particular crime and (2) there is strong evidence that the defendant was the perpetrator, it follows that evidence of third-party guilt must be weak. But this logic depends on an accurate evaluation of the prosecution's proof, and the true strength of the prosecution's proof cannot be assessed without considering challenges to the reliability of the prosecution's evidence. Just because the prosecution's evidence, if credited, would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case. And where the credibility of the prosecution's witnesses or the reliability of its evidence is not conceded, the strength of the prosecution's case cannot be assessed without making the sort of factual findings that have traditionally been reserved for the trier of fact and that the South Carolina courts did not purport to make in this case.

. . .

The point is that, by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt. Because the rule applied by the State Supreme Court in this case did not heed this point, the rule is "arbitrary" in the sense that it does not rationally serve the end that the *Gregory* rule and other similar third-party guilt rules were designed to further. Nor has the State identified any other legitimate end that the rule serves.

*Holmes,* 547 U.S. at 327–31, 126 S.Ct. at 1733–35 (internal quotations and citations omitted) *abrogating State v. Gay,* 343 S.C. 543, 541 S.E.2d 541 (2001). The *Holmes* court concluded the rule applied in *State v. Holmes* violated a criminal defendant's right to " 'a meaningful opportunity to present a complete defense.' " *Id.* (citing *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)).

 Despite previously professing intentions not to argue third-party guilt, Rice raised the issue again after Quattlebaum testified, citing *State v. Holmes,* 605 S.E.2d 19, 361 S.C. 333 (2004).[2] Rice attempted to introduce evidence implicating Tiki by showing that a composite sketch of the suspect identified as Rice looked remarkably like Tiki. In addition, Rice maintained Bryant previously named Nikki as the murderer.

The trial court found the evidence failed to meet the standard in *State v. Holmes* or the "long line of cases" addressing third-party guilt. Accordingly, Quattlebaum could relate only that Bryant told her it was not Rice who had committed the crime. Quattlebaum was specifically prohibited from testifying that Bryant said Nikki (or Tiki) killed Brennan. The trial court concluded:

> [A]s part of a defendant's defense, it is not proper to just raise this, well somebody else could have done it . . . unless you have a specific chain of facts and circumstances to satisfy the standards for third-party evidence. . . .

> [T]hese inferences in front of the jury about some third person and vague references like that are specifically what's prohibited and it's been ruled not to be a part of a defendant's constitutional rights to maintain their innocence on something as to point vaguely to some third person. . . .

> You can impeach a witness and that's not the issue. The issue is, [sic] is whether you can bring up this third person who is not in front of the jury other than in this vague way. And there is, as I understand from defense counsel, no other evidence creating a chain of circumstances in facts that would indicate third-party guilt. . . .

---

2. Rice was tried and convicted prior to the United States Supreme Court's decision in *Holmes v. South Carolina,* 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).

I'll let you ask her if she ever made the statement that it wasn't her [Rice], but without getting into this issue that it was somebody else who did it.

The trial court adhered to the *Gregory* rule and applied the proper standard for admission of third-party guilt evidence— there must be such proof of connection with the crime, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party. The evidence Rice asserted in support of introducing the third-party guilt testimony implicated Nikki at times, and Tiki at times, with no clarification as to whether they were the same individual. The record is void of facts or circumstances, other than Bryant's inconsistent statements, linking anyone other than Rice to Brennan's murder. The proffered evidence casts a mere "bare suspicion" on Nikki or Tiki and fails to connect either to the murder by way of the facts and circumstances surrounding the crime.

Moreover, any error in the trial court's ruling was harmless. Quattlebaum confirmed that Bryant's prior statement: (1) indicated Rice had nothing to do with Brennan's murder; and (2) was inconsistent with Bryant's trial testimony, thus impeaching her truthfulness, as defense counsel had originally intended. Additionally, the jury heard multiple times from Bryant on direct and cross-examination that she, at one point, told police Nikki had been involved in the murder. The trial court appropriately permitted Quattlebaum's testimony about Bryant's prior statement, tailored for impeachment purposes only, and excluded the portion of the statement that substantively pointed to the guilt of a third party.

## II. Hearsay

Rice argues that an investigating officer's testimony about Rice's objection to being fingerprinted was inadmissible hearsay. We disagree.

Initially, we note this issue is likely not preserved. Trial counsel did not object when Officer Smith made the alleged hearsay statement. Instead, counsel made a motion to strike stating, "He's talking about what someone else did." Unless an objection is made at the time the evidence is offered

and a final ruling made, the issue is not preserved for review. *State v. Simpson*, 325 S.C. 37, 42, 479 S.E.2d 57, 60 (1996). Furthermore, an objection must be on a specific ground. *State v. Nichols*, 325 S.C. 111, 120, 481 S.E.2d 118, 123 (1997); *State v. New*, 338 S.C. 313, 318, 526 S.E.2d 237, 239 (Ct.App. 1999). A general objection which does not specify the particular ground on which the objection is based is insufficient to preserve a question for review. *State v. Patterson*, 324 S.C. 5, 17, 482 S.E.2d 760, 766 (1997). In order to preserve for review an alleged error, the objection should be sufficiently specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the trial court. *New*, 338 S.C. at 318, 526 S.E.2d at 239; *see also Campbell v. Bi–Lo, Inc.*, 301 S.C. 448, 454, 392 S.E.2d 477, 481 (Ct.App. 1990) (holding where the ground for objection is not stated in the record, there is no basis for appellate review).

Rule 103(a)(1), SCRE, requires specificity where the ground for objection is not apparent from the context of the discussion contained in the record. *New*, 338 S.C. at 318, 526 S.E.2d at 239. Here, trial counsel never actually made an objection, only a motion to strike. The trial transcript reflects very little discussion and does not make the ground for any objection apparent. Trial counsel never raised hearsay, and it appears more likely his concern was whether Officer Smith's testimony was based on personal knowledge. Because trial counsel never objected and specified his concern with the testimony on the record, the issue is not preserved for our review.

Rice's argument fails on the merits as well. Rule 801(c), SCRE, defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Rule 801(a), SCRE. "An out of court statement by someone other than the person testifying which is used to prove the truth of the matter asserted constitutes hearsay and is inadmissible unless it falls within an exception." *Watson v. State*, 370 S.C. 68, 71, 634 S.E.2d 642, 644 (2006) (citing *Dawkins v. State*, 346 S.C. 151, 156, 551 S.E.2d 260, 262

(2001)). Conversely, a statement that is not offered to prove the truth of the matter asserted should not be excluded as hearsay. *Floyd v. Floyd*, 365 S.C. 56, 82, 615 S.E.2d 465, 479 (Ct.App.2005).

■■ The leading case in South Carolina in regard to the principle that general testimony in regard to a law enforcement investigation is NOT hearsay is *State v. Brown*, 317 S.C. 55, 451 S.E.2d 888 (1994). *Brown* edifies:

> Evidence is not hearsay unless it is an out of court statement offered to prove the truth of the matter asserted. *State v. Sims*, 304 S.C. 409, 405 S.E.2d 377 (1991), *cert. denied*, 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed.2d 434 (1992). Additionally, an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken. *United States v. Love*, 767 F.2d 1052 (1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 849, 88 L.Ed.2d 890 (1986). Here, these statements were not entered for their truth but rather to explain why the officers began their surveillance. These statements are not hearsay and, therefore, the trial judge committed no error in allowing these statements into evidence."

*Id.* at 63, 451 S.E.2d at 894.

Additionally, the rule is elucidated in *State v. Thompson*, 352 S.C. 552, 575 S.E.2d 77 (Ct.App.2003), that testimony concerning a statement from a bystander to the police was not hearsay because it was not offered to prove the truth of the matter asserted but rather to explain and outline the investigation and the officer's reason for going to the defendant's home.

Evidence explaining why law enforcement is in a particular area has been held to be relevant information for the jury to consider. *State v. Johnson*, 318 S.C. 194, 456 S.E.2d 442 (Ct.App.1995); *State v. Davis*, 309 S.C. 56, 419 S.E.2d 820 (Ct.App.1992).

In *State v. Weaver*, we held the testimony of a police officer about conclusions he made based on his investigation was not hearsay. 361 S.C. 73, 86, 602 S.E.2d 786, 792 (Ct.App.2004) *cert. granted*, March 23, 2006. Although the officer's investigation included interviews with witnesses, the officer never

repeated any statements made to him by individuals at the crime scene. *Id.*

As in *Weaver*, the testimony of Officer Smith in this case is not hearsay. Officer Smith did not testify as to what someone told him. He simply related what he learned as a result of his investigation:

Q: Are you familiar with the efforts to take her fingerprints out at the jail prior to this for comparison against the car fingerprints?

A: Yes, sir.

Q: Did she voluntarily submit to that?

A: She actually didn't, I believe, didn't want to do it at first when one of our detectives went there to my understanding.

Q: Was he not present? If not, I move to strike his answer. He's talking about what somebody else *did.*

Court: Y'all have been asking him all day about other stuff everybody else was doing. I'm going to allow it.

Q: Based on your investigation as the chief investigating officer who is responsible, as [defense counsel] pointed out, for the actions of those who investigated under you, did you learn as part of your investigation, that she fought the fingerprinting?

A: She didn't want to do it and basically was informed, you know, fingerprinting is something that's-they have to comply to in custody, so she had to take it.

The hearsay rule does not require exclusion of testimony about what an investigating officer learns from his investigation. Because this testimony did not constitute hearsay, its admission was not an abuse of discretion. Even if Officer Smith had repeated an out of court statement in court, the purpose of the repetition, as the State noted, was not to prove the matter asserted, but to suggest Rice's state of mind about surrendering her fingerprints.

In the event testimony is improperly admitted, the error is reversible only when the admission causes prejudice. *State v. Price,* 368 S.C. 494, 499, 629 S.E.2d 363, 366 (2006). If Smith's testimony constituted inadmissible hearsay, the

admission was harmless. The information he provided only served to show Rice did not want her fingerprints taken. Nothing in the record indicates the prints matched evidence found at the scene of the murder. The challenged evidence was non-prejudicial in light of its limited purpose of demonstrating that Rice did not want to cooperate with the investigation—not to prove that she committed the crime.

## III. In–Court Identification

Rice alleges the trial court erred in admitting Heidi Feagin's in-court identification, maintaining it was unreliable and posed a substantial risk of misidentification. Additionally, Rice complained the trial court erred in finding defense counsel, through cross-examination, opened the door allowing the State to elicit Feagin's identification. Both of Rice's contentions are without merit.

The admission of eyewitness identification is in the trial court's discretion and will not be disturbed on appeal absent an abuse of that discretion or the commission of prejudicial legal error. *State v. Moore*, 343 S.C. 282, 288, 540 S.E.2d 445, 448 (2000); *State v. Brown*, 356 S.C. 496, 502, 589 S.E.2d 781, 784 (Ct.App.2003).

Reliability is the linchpin in determining the admissibility of identification testimony. *Id.* at 504, 589 S.E.2d at 785 citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Blassingame*, 338 S.C. 240, 251, 525 S.E.2d 535, 541 (Ct.App.1999).

The admissibility of an in-court identification is frequently challenged by a criminal defendant on the grounds that a pre-trial identification procedure was unduly suggestive. *See e.g., Moore*, 343 S.C. at 286, 540 S.E.2d at 447 ("An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification."). In those cases, the standard for determining the admissibility of both out-of-court and in-court identifications is whether the identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Gambrell*, 274 S.C. 587, 590, 266 S.E.2d 78,

80 (1980). A criminal defendant may be deprived of due process of law by an identification procedure that is unnecessarily suggestive and conducive to irreparable mistaken identification. *State v. Mansfield,* 343 S.C. 66, 77, 538 S.E.2d 257, 263 (Ct.App.2000).

A court must consider the totality of circumstances to determine whether an identification may be reliable even when the procedure has been suggestive. *See Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The factors to be considered in evaluating the likelihood of misidentification include: (1) the opportunity of the witness to view the accused; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.*

However, the requirement that a court review the totality of circumstances to determine whether an identification is reliable does not apply in the absence of a pre-trial identification procedure. *State v. Lewis,* 363 S.C. 37, 42, 609 S.E.2d 515, 518 (2005). In *Lewis,* the South Carolina Supreme Court affirmed this court's holding that "the *Neil v. Biggers* analysis should not be extended to protect criminal defendants against identifications that occur for the first time in court without a pre-trial identification." *Lewis,* 363 S.C. at 42, 609 S.E.2d at 518.

In discussing its reasoning, the Court explained, "these extra safeguards [afforded by a *Neil v. Biggers* analysis] are not applicable to an in-court identification because the witness' testimony is subject to the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial." *Lewis,* 363 S.C. at 43, 609 S.E.2d at 518 (citing *Ralston v. State,* 251 Ga. 682, 309 S.E.2d 135, 136 (1983)).

Accordingly, we conclude *Neil v. Biggers* does not apply to a first-time in-court identification because the judge is present and can adequately address relevant problems; the jury is physically present to witness the identification, rather than merely hearing testimony about it; and cross-examination

offers defendants an adequate safeguard or remedy against suggestive examinations.

*Lewis,* 363 S.C. at 43, 609 S.E.2d at 518.

A diligent search of the evidentiary record reveals no evidence whatsoever of a witness identification involving Rice prior to Feagin's in-court identification. The extant record convinces the court of the vivacity and applicability of the *Lewis* rule to the case *sub judice.*

■ Here, the witness only identified Rice at trial, not at any time prior to trial. Therefore, the factors provided by *Neil* do not apply. The protections needed from suggestive pretrial identifications are not necessary in an in-court identification because of cross-examination and argument. Rice had the opportunity to cross-examine Feagin regarding her in-court identification. This was the proper remedy. The trial court did not err when it allowed the witness to make an in-court identification of Rice.

Moreover, the record fully supports the trial court's ruling on the question of whether defense counsel "opened the door" to allow Feagin's identification.

■ South Carolina precedent has firmly established that otherwise inadmissible evidence may be properly admitted when opposing counsel "opens the door" to that evidence. *State v. Young,* 364 S.C. 476, 485, 613 S.E.2d 386, 391 (Ct.App. 2005) *cert. granted,* Jan. 2007; *see also State v. Curtis,* 356 S.C. 622, 632, 591 S.E.2d 600, 605 (2004) ("Given that [defendants] maintained that PPS did not allow pornographic materials or links on the website, it is patent that they opened the door to this line of inquiry."); *State v. White,* 361 S.C. 407, 415, 605 S.E.2d 540, 544 (2004) (ruling expert could testify that she believed the victim in this case because defendant opened the door by cross-examining expert about other cases in which she did not believe victim); *State v. Dunlap,* 353 S.C. 539, 541, 579 S.E.2d 318, 319 (2003) (holding defense counsel's opening statement "opened the door to the introduction of evidence rebutting the contention that [defendant] was merely an addict"); *State v. Taylor,* 333 S.C. 159, 175, 508 S.E.2d 870, 878 (1998) ("[B]ecause appellant 'opened the door' about his relationship with his wife, the solicitor was entitled to cross-

examine him about the relationship, even if the responses brought out appellant's prior criminal domestic violence conviction.").

■ Furthermore, an appellant cannot complain of prejudice resulting from admission of evidence to which she opened the door. *See State v. Foster,* 354 S.C. 614, 623, 582 S.E.2d 426, 431 (2003) (noting one who opens the door to evidence cannot complain of its admission); *State v. Robinson,* 305 S.C. 469, 474, 409 S.E.2d 404, 408 (1991) ("Since appellant opened the door to this evidence, he cannot complain of prejudice from its admission."); *State v. Beam,* 336 S.C. 45, 53, 518 S.E.2d 297, 301 (Ct.App.1999) ("Beam cannot complain about the admission of evidence where he opened the door to the evidence.").

■ In the present case, during recross, defense counsel asked Feagin why she was able to assist in preparing composite sketches, "but now say you can't identify them because you didn't get a good look at them. How could you say all of those things if you didn't get a good look at them?" Feagin responded, "I didn't say I couldn't identify them because I couldn't get a good look at them. It's been a long time, I'm sure I can still identify them, it's just been a long time since I had a look at them."

In an *in camera* hearing, the State asked the court to allow Feagin's in-court identification of Rice on redirect in "response to new matter brought up by the defense attorney during his recross." The prosecutor emphasized "[I] never asked her if she could identify them. [Defense counsel] asked her about that. And she responded that she could. The jury heard it. . . ."

Rice countered that the State laid the foundation for Feagin's in-court identification on direct examination, but stopped short of extracting it. The trial court reviewed direct, cross, redirect and recross testimony and ultimately determined:

> There was no discussion at all that I'm seeing that touched on the issue of whether or not she [Feagin] could make an identification here and now. I'm not seeing that at all in direct or redirect. . . .

I thought that was where they [the State] were going, they never did. . . . Nobody ever brought up, an any point, until your [defense counsel's] last question to her, whether or not she could make an identification of the person if she saw them. It just never got brought up. . . .

Based on the review of the transcript, the trial court concluded defense counsel opened the door allowing the State to elicit Feagin's in-court identification. Rice cannot complain about the admission of identification evidence when she opened the door to that evidence.

## IV. Business Records

Rice asserts the trial court admitted her former employer's business records in error. Specifically, Rice claims the records constituted inadmissible hearsay because they lacked the level of trustworthiness required under Rule 803(6), SCRE. We disagree.

South Carolina adopted section 19–5–510 of the South Carolina Code, the Uniform Business Record as Evidence Act, prior to the promulgation of the South Carolina Rules of Evidence. The statute provides:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

S.C.Code Ann. § 19–5–510 (1985).

■■■ This section gives the trial court control to exclude or require additional proof if the authenticity or trustworthiness of the business record is suspect. *See Kershaw County Dep't of Soc. Servs. v. McCaskill*, 276 S.C. 360, 362, 278 S.E.2d 771, 773 (1981).

Patterned after the South Carolina Act and the Federal Rules, Rule 803(6), SCRE, excepts records of regularly con-

ducted activity from the hearsay exclusion.[3] Excepted records include:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness; provided, however, that subjective opinions and judgments found in business records are not admissible. The term "business" as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Rule 803(6), SCRE.

▮▮▮ A business record without evidence about the manner in which it is prepared or the source of its information does not meet the requirements in either section 19–5–510 or Rule 803(6), SCRE. *See State v. Sarvis*, 317 S.C. 102, 107, 450 S.E.2d 606, 609 (Ct.App.1994); *see also Connelly v. Wometco Enterprises, Inc.*, 314 S.C. 188, 191, 442 S.E.2d 204, 206 (Ct.App.1994) (holding employment file, although relevant and otherwise admissible, was properly excluded from evidence where the employer failed to offer the file through its custodian or another qualified witness); *State v. McFarlane* 279 S.C. 327, 330, 306 S.E.2d 611, 613 (1983) (finding trial court properly refused to admit medical report when no one could testify to the identity, mode of preparation, or whether report was made in the regular course of business at or near the time of the

---

**3.** Section 19–5–510 has been construed to preclude admission of subjective opinions or judgments within a business record. *See McCaskill*, 276 S.C. at 362, 278 S.E.2d at 773; *State v. Key*, 277 S.C. 214, 215, 284 S.E.2d 781, 783 (1981); *State v. Patterson*, 290 S.C. 523, 527–28, 351 S.E.2d 853, 855 (1986). The Federal Rules of Evidence do not contain this restriction. Consequently, Rule 803(6), SCRE, differs from the federal rule in that the word "opinions" in the first sentence is deleted and the phrase, "provided, however, that subjective opinions and judgments found in business records are not admissible" is added to the federal rule to make it consistent with state law.

accident). Business record entries must have been made at or near the time of the act to which they relate; the purpose of this mandate is to aid in establishing that the record was honestly and fairly kept. *South Carolina Nat'l Bank v. Jones*, 302 S.C. 154, 155, 394 S.E.2d 323, 324 (1990).

■ America's Best Security (ABS) business records tracked weapons and other equipment issued to employees. The records custodian for the company identified the admitted documents. She confirmed the records were kept in the normal course of the company's business and prepared according to the requirements of the law. The record indicating Rice's assigned equipment had not been returned was submitted on November 29, 2001, approximately one month after Brennan's murder and Rice's termination from ABS.

The admitted documents contained the following information: Rice was issued a weapon and qualified by SLED to shoot a .357 Magnum-type gun; her last working day was October 30, 2001; SLED was notified of Rice's termination from ABS; Rice was listed among employees terminated in the last ninety days on November 29, 2001; and Rice had not returned equipment assigned to her, including her weapon, as of November 29, 2001. Two ABS employees with supervisory authority over Rice corroborated this evidence. Furthermore, the testimony of the records custodian and corroborating witnesses underwent vigorous cross-examination.

The essence of Rice's challenge is that ABS is now bankrupt and some records were stored and possibly misplaced, rendering the entire record keeping process untrustworthy. However, Rule 803(6), SCRE, focuses on the source of the information or the method and circumstances of preparation as indicia of trustworthiness. No probative evidence suggests the sources of the information recorded in the ABS documents were not credible or the methods and circumstances of preparation were unreliable. The evidence Rice relies on simply identified problems in accessing the business records after the company stored them and does not cast suspicion on the records' trustworthiness.

■ Moreover, any error in admitting the ABS business records was harmless. The records were merely cumulative to the testimony of Rice's supervisors, who confirmed that

Rice had not returned her weapon as of November 29, 2001. *State v. Douglas,* 367 S.C. 498, 520, 626 S.E.2d 59, 71 (Ct.App. 2006) ("The admission of improper evidence is harmless where the evidence is merely cumulative to other evidence.") *cert. granted* June, 2007.

## V. Curative Instruction

In closing argument, the prosecutor asked the jury to give the victim's wife peace and the victim justice. Rice contends the trial court erred by failing to give the jury an instruction curing the prosecutor's comment. We disagree.

The State urges that Rice failed to preserve this issue for appellate review by raising the issue in an off-the-record conference. An objection made during an off-the-record conference which is not made part of the record does not preserve the question for review. *York v. Conway Ford, Inc.,* 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997). However, in *State v. Hamilton,* we held York was inapplicable when the initial off-the-record bench conference was later made a part of the record. 344 S.C. 344, 361, 543 S.E.2d 586, 595 (Ct.App.2001) *overruled on other grounds by State v. Gentry,* 363 S.C. 93, 610 S.E.2d 494 (2005).

In Hamilton, defense counsel requested a jury instruction on the prosecutor's comments during an off-the-record bench conference. *Id.* at 360, 543 S.E.2d at 595. The trial court denied the request and defense counsel moved for a mistrial. *Id.* at 361, 543 S.E.2d at 595. The State alleged any errors raised by Hamilton in the bench conference were off-the-record and not preserved. *Id.* at 360, 543 S.E.2d at 595. We held the initial off-the-record conference had subsequently been made part of the record by the acquiescence of the judge, prosecution, and defense counsel. The issue appellant raised concerning the prosecutor's comment was preserved for review. *Id.*

As in *Hamilton,* defense counsel in the case at bar put his objection to the prosecutor's comment on the record when the jury began its deliberation. Counsel specifically stated his requested relief—a curative instruction—and the basis for his objection—that the comment improperly injected passion or sympathy into the trial. Neither the trial court nor

the State objected to defense counsel putting his exception on the record. Therefore, Rice's objection to the trial court's failure to give a curative instruction is preserved.

It is well settled that the prosecution's closing argument must not appeal to the personal biases of the jurors or be calculated to arouse the jurors' passions or prejudices. *Humphries v. State,* 351 S.C. 362, 373, 570 S.E.2d 160, 166 (2002); *Simmons v. State,* 331 S.C. 333, 338, 503 S.E.2d 164, 166 (1998) (citing *State v.Copeland,* 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996)). The prosecution's closing argument should be confined to evidence in the record and the reasonable inferences that may be drawn from the evidence. *Vaughn v. State,* 362 S.C. 163, 169, 607 S.E.2d 72, 75 (2004).

An argument asking the jurors to place themselves in the victim's shoes tends to destroy completely all sense of impartiality ·of the jurors, and its effect is to arouse passion and prejudice. *State v. Reese,* 370 S.C. 31, 38, 633 S.E.2d 898, 901 (2006).

The "Golden Rule" argument, suggesting to jurors as it does that they put themselves in the shoes of one of the parties, is generally impermissible because it encourages the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. Regardless of the nomenclature used, any argument that importunes the jurors to places themselves in the victim's shoes is disallowed Golden Rule Argument.

*State v. Reese,* 359 S.C. 260, 271, 597 S.E.2d 169, 175 (Ct.App. 2004), *rev'd on other grounds by* 370 S.C. at 38, 633 S.E.2d at 901.

Prosecutors are bound to rules of fairness in their closing arguments. *State v. Linder,* 276 S.C. 304, 312, 278 S.E.2d 335, 339 (1981). "While the solicitor should prosecute vigorously, his duty is not to convict a defendant but to see justice done. The solicitor's closing argument must, of course, be based upon this principle." *State v. Northcutt,* 372 S.C. 207, 222, 641 S.E.2d 873, 880 (2007).

When objection is timely made to improper remarks of counsel, the judge should rule on the objection, give a curative charge to the jury, and instruct offending counsel to

desist from improper remarks. *Mishoe v. QHG of Lake City, Inc.,* 366 S.C. 195, 202, 621 S.E.2d 363, 367 (Ct.App.2005) (citing *McElveen v. Ferre,* 299 S.C. 377, 381, 385 S.E.2d 39, 41 (Ct.App.1989)). Failure to give a requested jury instruction is not prejudicial error when the instructions given afford the proper test for determining the issues. *State v. Burkhart,* 350 S.C. 252, 263, 565 S.E.2d 298, 304 (2002) (citation omitted). "An error not shown to be prejudicial does not constitute grounds for reversal." *Brown v. Pearson,* 326 S.C. 409, 417, 483 S.E.2d 477, 481 (Ct.App.1997); *see also State v. Williams,* 367 S.C. 192, 195–96, 624 S.E.2d 443, 445 (Ct.App.2005).

██ Here, the prosecutor, while explaining demeanor evidence to the jury, made the following comment concerning witness Bryant:

> As an example of demeanor how you can tell when somebody's telling the truth, you saw her when she was telling you, begging for forgiveness for being too much of a coward to do something or to come forward and how she begged forgiveness and said she wanted Hilda to have peace. You saw that. You know that was raw truth. She want Hilda— she wanted to give Hilda peace. Ladies and gentlemen, I would ask you to give Hilda and Bernard justice as well.[4]

Defense counsel approached the bench and the trial court held an off-the-record conference. Defense counsel proceeded with closing argument. When the jury moved into deliberation, defense counsel reiterated the objection to the prosecutor's comment he had previously made off-the record:

> I objected to him making statements that the jury owed Hilda Brennan justice. I would ask that the jury be given a curative instruction on that. I believe that that comment improperly injected passion or sympathy into the trial of this case. And it was improper statement or comment during the opening on the law by the prosecution in this case.

The trial court responded:

> I told you I think his actual words were—you asked him to bring—he didn't say that they owed them justice, but I did not think it was an improper comment at the time and

---

4. Hilda is Bernard Brennan's widow.

certainly nothing that's not cured by the overall instruction to them.

A priori, we observe the trial court properly clarified that the prosecutor asked the jury to give the victim's wife peace and the victim justice. The court emphasized the prosecutor did not say "they owed them justice." Arguably, the prosecutor's comment was consistent with his duty, not to convict a defendant, but to see justice done. Viewed from that perspective, the prosecutor merely asked the jury to do the duty that was already required of them. The prosecutor's comment did not call for the jurors to put themselves in the victim's place and did not rise to the level of a Golden Rule argument.

■ If the prosecutor's request had reached that level of impropriety, the trial court's overall instructions to the jury effectively cured any potential prejudice. The judge stressed the State had the burden of proving Rice guilty beyond a reasonable doubt. He instructed the jury to consider only the competent evidence before them, based on the witnesses, exhibits made part of the record, and stipulations between counsel. The judge explained that, as jurors, they were sworn to accept and apply the law exactly as he stated it to them. It was their duty to decide the effect, the value, weight, and truth of the evidence presented during the course of the trial. He charged them to assess the credibility of witnesses who testified during trial and to evaluate the evidence to determine its truthfulness.

We conclude the trial court adequately set forth the proper test for determining the issues. Any error in failing to give a specific curative instruction was harmless.

## CONCLUSION

We hold:

(1) the alleged prior inconsistent statement concerning third-party guilt was inadmissible under a *State v. Gregory* and *Holmes v. South Carolina* analysis;

(2) the investigating officer's testimony was NOT hearsay under Rule 801(c), SCRE, and was admissible as a conclusion based on the officer's investigation;

(3) the in-court identification of Rice by Heidi Feagin was admissible based on *State v. Lewis* because there was no pre-trial identification procedure;

(4) the evidence of the former employer's business records met the test of section 19–5–510 of the South Carolina Code of Laws, Uniform Business Records as Evidence Act, and Rule 803(6), SCRE; and

(5) the prosecutor's statement to give the victim's wife peace and the victim justice did NOT violate *State v. Reese*, or the Golden Rule argument.

Accordingly, the trial court's rulings are

**AFFIRMED.**

THOMAS, J. and GOOLSBY, A.J. concur.